# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN R. CAMPAS, JR. | : | Civil No. 1:17-CV-0682 |
| | : | |
| Petitioner, | : | |
| | : | (Magistrate Judge Carlson) |
| v. | : | |
| | : | |
| MICHAEL CLARK, et. al., | : | |
| | : | |
| Respondents. | : | |

## MEMORANDUM OPINION

### I.    Introduction

In February of 2010, John Campas faced trial on multiple criminal charges relating to what was alleged to have been serial sexual abuse of Campas' paramour's five year old daughter over a period of one to two years. At trial, Campas voiced a wish to present good character evidence but Campas' past history of domestic violence collided with his desire to present evidence of his good character for peaceful, law-abiding behavior. Specifically, Campas had been charged with recklessly endangering another person, simple assault, and burglary, for which he was placed on ARD. He was later charged with burglary, criminal trespass, and harassment based on his assault of an ex-girlfriend. In addition there were two Protection from Abuse orders (PFAs) filed against him, one PFA violation, and contempt orders attached to two child support orders.

After the trial judge ruled that some evidence of Campas' history domestic violence and PFAs could be used to cross examine Campas' character witness, trial counsel was faced with a difficult strategic choice: Counsel could endeavor to present good character evidence through Campas and this witness, and run a grave risk that instances of Campas' bad character would be disclosed to the jury, or forego this type of good character testimony in order to exclude evidence relating to Campas' past domestic violence from the trial of this case. Presented with this strategic choice, counsel elected to advise his client to forego testifying, in order to minimize the risk that the jury would learn this highly prejudicial information.

Campas now challenges this strategic choice by counsel arguing that the strategic choice by counsel was so deficient that it constituted ineffective assistance of counsel. For the reasons set forth below, consistent with the findings made by the Pennsylvania courts, we disagree.

This is a federal habeas corpus petition filed by John R. Campas, Jr., a state prisoner confined at State Correctional Institution – Albion. In 2009, Campas was charged in an eight-count criminal information with the sexual assault of his ex-girlfriend's five year old daughter. In February 2010, after a four-day jury trial in the Court of Common Pleas of Luzerne County, the jury convicted Campas of six of the eight counts against him—involuntary deviate sexual intercourse with a child, aggravated indecent assault, corruption of minors, endangering the welfare

of a child, and two counts of indecent assault. At sentencing, Campas was determined to be a sexually violent predator and received an aggregate sentence of seventeen to thirty-four years in prison.

After exhausting his state appeals, Campas filed the instant habeas corpus petition. Campas seeks to be released from custody, arguing that his trial counsel was ineffective when he advised Campas not to take the stand and testify in his own defense. We disagree, and for the reasons that follow, we will deny this petition for writ of habeas corpus.

## II.      Statement of Facts and of the Case

The factual background of this case was aptly summarized by the Pennsylvania Superior Court in its opinion affirming the petitioner's conviction and judgment of sentence (Doc 15-3, at 4). The charges against Campas arose out of the sexual molestation of his ex-girlfriend's five year old daughter, A.C., over a period of one to two years. (Id.) During the four day trial, the jury heard testimony from the victim, who was seven years old at the time of trial, along with testimony from the victim's brother, mother, and babysitter. (Id.) The Commonwealth also presented as witnesses the investigating police officer and a medical expert who specialized in the field of child abuse and neglect. (Id., at 5).

Campas advised the trial court that he intended to call his pastor, Pastor John Murray, as a character witness, and that he wished to testify in his own defense.

(Id.) The Commonwealth asked for a proffer of the pastor's testimony, and in response to that proffer, advised the defense that it would cross examine Pastor Murray about his knowledge of two Protection from Abuse ("PFA") orders against Campas. (Id.) After hearing arguments, the trial court ruled that the Commonwealth would be permitted to question Pastor Murray about Campas' criminal contempt conviction for violating one of the PFAs. (Id.) It was after this ruling that the defense decided not to call Pastor Murray as a character witness, and Campas also decided not to testify after a full colloquy on the record by the court. (Id.) The jury subsequently convicted Campas of the six aforementioned charges, but acquitted him of rape of a child and unlawful sexual contact with a minor. (Id.) At sentencing and after hearing expert testimony on the issue, it was determined that Campas qualified as a sexually violent predator. (Id.) The Superior Court detailed in its decision the factors that were taken into consideration:

> [T]here was only one victim, the offenses spanned a two-year period, and included multiple types of sexual acts. Appellant was the victim's mother's paramour at the time, lived with the victim, and he had a caretaker role that he exploited to gain access. Ms. Brust concluded that Appellant did not exceed the means necessary to accomplish the offenses or display unusual cruelty during the commission of the acts.
>
> The victim was only five years old, unable to consent, and an age consistent with pedophiliac interests. Appellant, twenty-nine years old, had no prior history of sexually offending, although he had been charged with recklessly endangering another person, simple assault, and burglary, for which he was placed on ARD. He was later charged with burglary, criminal trespass, and harassment based on his assault of an ex-girlfriend. There were two PFA's filed against him, one PFA

violation, and contempt orders attached to two child support orders. Ms. Brust defined pedophilia as a mental abnormality considered to be lifelong, incurable, and likely to reoffend. It was Ms. Brust's professional opinion that Appellant met the criteria for classification as a sexually violent predator: he exhibited the mental abnormality of pedophilia and engaged in predatory offending with the minor victim over a considerable length of time.

(Id., at 6-7).

After he was sentenced, and after his post-sentence motions were denied (Doc. 15-2, at 92), Campas appealed to the Superior Court, which upheld his conviction and sentence. (Doc. 15-3, at 4). On his direct appeal Campas, who was represented by his trial counsel, argued that the trial court erroneously ruled that the Commonwealth could impeach him with evidence of the violation of the PFA, and the Superior Court noted that there had been no such ruling during the trial. (Id., at 15). Campas then filed a Petition for Allowance of Appeal to the Supreme Court of Pennsylvania, which was denied on March 6, 2013.

On September 12, 2013, Campas filed a *pro se* petition for post-conviction collateral relief pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. § 9541, raising three grounds of ineffective assistance of his trial counsel: (1) the failure to call a fact witness and medical expert, (2) interference with his right to testify, and (3) failure to assert an objection to evidence of bad acts. (Doc. 15-3, at 18). PCRA counsel was appointed and filed a supplement to the original PCRA petition. (Id., at 49). After a hearing, the PCRA court denied the petition on

February 20, 2015. (<u>Id.</u>, at 68). Campas' trial counsel testified at the PCRA hearing that he spoke with Campas, and that Campas intended to get on the stand and tell the jury that he was a "good guy" who did not commit the crimes he was charged with. (<u>Id</u>. at 61.) Trial counsel believed that this character testimony would open the door and allow the Commonwealth to use the PFA contempt conviction to impeach him. (<u>Id.</u>) On the basis of this strategic trial assessment, counsel advised Campas to refrain from testifying, and the PCRA court concluded that counsel had an objectively reasonable basis for advising Campas against testifying. (<u>Id.</u>, at 80).

Campas appealed, and on May 3, 2016, the Superior Court affirmed the denial of his PCRA petition. (<u>Id.</u>, at 97). In response to the argument that counsel interfered with his right to testify, the Superior Court agreed with the PCRA court that trial counsel had an objectively reasonable basis for advising Campas not to testify based on counsel's testimony at the PCRA hearing. (<u>Id.</u>, at 107). The court noted that, had Campas taken the stand and testified to his non-violent character, the Commonwealth would have been permitted to impeach his testimony with evidence of the PFA violation. (<u>Id.</u>, at 108). Thus, trial counsel "had a strategy" for advising Campas not to testify. (<u>Id.</u>)

Campas' Petition for Allowance of Appeal to the Supreme Court of Pennsylvania was denied on October 25, 2016. (Doc. 15-3, at 111). Subsequently, Campas filed the instant habeas corpus petition. The sole issue raised in the

petition is that trial counsel rendered ineffective assistance of counsel by advising him not to testify. On this score, Campas' petition is premised on the notion that trial counsel's advice was given due solely to a misunderstanding of the trial court's ruling on the PFA evidence. Specifically, Campas appears to argue that trial counsel erroneously believed that the trial court's evidentiary ruling that character witnesses could be questioned about his past domestic violence and PFA history automatically applied to Campas' own testimony. Based upon this alleged misunderstanding, Campas asserts that trial counsel's advice to refrain from testifying fell below minimal constitutional standards of competence, and constituted ineffective assistance of counsel. On this score, however, Campas' argument ignores the actual rationale proffered by trial counsel at the PFA hearing, and the findings of the Pennsylvania courts, that it was the good character content of Campas' proposed testimony which created the risk of potentially devastating cross examination on Campas' PFA history. In short, Campas' petition does not address the fact that the strategic advice counsel provided was premised upon counsel's understanding that Campas wished to testify to his good character, testimony which would have opened the door to this type of highly prejudicial cross examination.

## III.    Discussion

### A.    Habeas Corpus—Substantive Standard of Review and Procedural Exhaustion Requirements

#### 1.    Substantive Standards

In order to obtain federal habeas corpus relief, a state prisoner seeking to invoke the power of this Court to issue a writ of habeas corpus must satisfy the standards prescribed by 28 U.S.C. § 2254, which provides in part as follows:

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.
>
> (b) (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—
>
> (A) the applicant has exhausted the remedies available in the courts of the State;
> ..........
> (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

28 U.S.C. § 2254(a) and (b).

As this statutory text implies, state prisoners must meet exacting substantive and procedural benchmarks in order to obtain habeas corpus relief. At the outset, a petition must satisfy exacting substantive standards to warrant relief. Federal courts may "entertain an application for a writ of habeas corpus on behalf of a person in

custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). By limiting habeas relief to state conduct which violates "the Constitution or laws or treaties of the United States," § 2254 places a high threshold on the courts. Typically, habeas relief will only be granted to state prisoners in those instances where the conduct of state proceedings led to a "fundamental defect which inherently results in a complete miscarriage of justice" or was completely inconsistent with rudimentary demands of fair procedure. See, e.g., Reed v. Farley, 512 U.S. 339, 354 (1994). Thus, claimed violations of state law, standing alone, will not entitle a petitioner to § 2254 relief, absent a showing that those violations are so great as to be of a constitutional dimension. See Priester v. Vaughan, 382 F.3d 394, 401–02 (3d Cir.2004).

## 2. Deference Owed to State Courts

These same principles which inform the standard of review in habeas petitions and limit habeas relief to errors of a constitutional dimension also call upon federal courts to give an appropriate degree of deference to the factual findings and legal rulings made by the state courts in the course of state criminal proceedings. There are two critical components to this deference mandated by 28 U.S.C. § 2254.

First, with respect to legal rulings by state courts, under § 2254(d), habeas relief is not available to a petitioner for any claim that has been adjudicated on its merits in the state courts unless it can be shown that the decision was either: (1) "contrary to" or involved an unreasonable application of clearly established case law; see 28 U.S.C. § 2254(d)(l); or (2) was "based upon an unreasonable determination of the facts," <u>see</u> 28 U.S.C. § 2254(d)(2). Applying this deferential standard of review, federal courts frequently decline invitations by habeas petitioners to substitute their legal judgments for the considered views of the state trial and appellate courts. <u>See</u> <u>Rice v. Collins</u>, 546 U.S. 333, 338–39 (2006); <u>see also</u> <u>Warren v. Kyler</u>, 422 F.3d 132, 139–40 (3d Cir.2006); <u>Gattis v. Snyder</u>, 278 F.3d 222, 228 (3d Cir.2002).

In addition, § 2254(e) provides that the determination of a factual issue by a state court is presumed to be correct unless the petitioner can show by clear and convincing evidence that this factual finding was erroneous. See 28 U.S.C. § 2254(e)(1). This presumption in favor of the correctness of state court factual findings has been extended to a host of factual findings made in the course of criminal proceedings. <u>See, e.g.</u>, <u>Maggio v. Fulford</u>, 462 U.S. 111, 117 (1983) (per curiam); <u>Demosthenes v. Baal</u>, 495 U.S. 731, 734–35 (1990). This principle applies to state court factual findings made both by the trial court and state appellate courts. <u>Rolan v. Vaughn</u>, 445 F.3d 671 (3d Cir.2006). Thus, we may not

re-assess credibility determinations made by the state courts, and we must give equal deference to both the explicit and implicit factual findings made by the state courts. <u>Weeks v. Snyder</u>, 219 F.3d 245, 258 (3d Cir.2000). Accordingly, in a case such as this, where a state court judgment rests upon factual findings, it is well-settled that:

> A state court decision based on a factual determination, ..., will not be overturned on factual grounds unless it was objectively unreasonable in light of the evidence presented in the state proceeding. <u>Miller–El v. Cockrell</u>, 537 U.S. 322, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003). We must presume that the state court's determination of factual issues was correct, and the petitioner bears the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); <u>Campbell v. Vaughn</u>, 209 F.3d 280, 285 (3d Cir.2000).

<u>Rico v. Leftridge–Byrd</u>, 340 F.3d 178, 181 (3d Cir.2003).

Applying this standard of review, federal courts may only grant habeas relief whenever "[o]ur reading of the PCRA court records convinces us that the Superior Court made an unreasonable finding of fact." <u>Rolan</u>, 445 F.3d at 681.

### 3.     <u>Ineffective Assistance of Counsel Claims</u>

These general principles apply with particular force to habeas petitions that are grounded in claims of ineffective assistance of counsel. It is undisputed that the Sixth Amendment to the United States Constitution guarantees the right of every criminal defendant to effective assistance of counsel. Under federal law, a collateral attack of a sentence based upon a claim of ineffective assistance of counsel must meet a two-part test established by the Supreme Court in order to

survive. Specifically, to prevail on a claim of ineffective assistance of counsel, a petitioner must establish that: (1) the performance of counsel fell below an objective standard of reasonableness; and (2) that, but for counsel's errors, the result of the underlying proceeding would have been different. <u>Strickland v. Washington</u>, 466 U.S. 668, 687–88, 691–92 (1984). A petitioner must satisfy both of the Strickland prongs in order to maintain a claim of ineffective counsel. <u>George v. Sively</u>, 254 F.3d 438, 443 (3d Cir. 2001).

At the outset, Strickland requires a petitioner to "establish first that counsel's performance was deficient." <u>Jermyn v. Horn</u>, 266 F.3d 257, 282 (3d Cir. 2001). This threshold showing requires a petitioner to demonstrate that counsel made errors "so serious" that counsel was not functioning as guaranteed under the Sixth Amendment. <u>Id.</u> Additionally, the petitioner must demonstrate that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms. <u>Id.</u> However, in making this assessment "[t]here is a 'strong presumption' that counsel's performance was reasonable." <u>Id.</u> (quoting <u>Berryman v. Morton</u>, 100 F.3d 1089, 1094 (3d Cir. 1996)).

But a mere showing of deficiencies by counsel is not sufficient to secure habeas relief. Under the second Strickland prong, a petitioner also "must demonstrate that he was prejudiced by counsel's errors." <u>Id.</u> This prejudice requirement compels the petitioner to show that "there is a reasonable probability

that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. A "reasonable probability" is defined as "a probability sufficient to undermine confidence in the outcome." Id.

Thus, as set forth in Strickland, a petitioner claiming that his criminal defense counsel was constitutionally ineffective must show that his lawyer's "representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Thomas v. Varner, 428 F.3d 491, 499 (3d Cir.2005) (quoting Strickland, 466 U.S. at 689). The petitioner must then prove prejudice arising from counsel's failings. "Furthermore, in considering whether a petitioner suffered prejudice, '[t]he effect of counsel's inadequate performance must be evaluated in light of the totality of the evidence at trial: a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support.'" Rolan, 445 F.3d at 682 (quoting Strickland, 466 U.S. at 696) (internal quotations omitted).

Although sometimes couched in different language, the standard for evaluating claims of ineffectiveness under Pennsylvania law is substantively consistent with the standard set forth in Strickland. See Commonwealth v. Pierce,

527 A.2d 973, 976–77 (Pa.1987); see also Werts v. Vaugh, 228 F.3d 178, 203 (3d Cir.2000) ("[A] state court decision that applied the Pennsylvania [ineffective assistance of counsel] test did not apply a rule of law that contradicted Strickland and thus was not 'contrary to' established Supreme Court precedent"). Accordingly, a federal court reviewing a claim of ineffectiveness of counsel brought in a petition under 28 U.S.C. § 2254 may grant federal habeas relief if the petitioner can show that the state court's adjudication of his claim was an "unreasonable application" of Strickland. Billinger v. Cameron, 2010 U.S. Dist. LEXIS 63759, at *11, 2010 WL 2632286 (W.D. Pa. May 13, 2010). In order to prevail against this standard, a petitioner must show that the state court's decision "cannot reasonably be justified under existing Supreme Court precedent." Hackett v. Price, 381 F.3d 281, 287 (3d Cir. 2004); see also Waddington v. Sarausad, 555 U.S. 179, 190 (2009) (where the state court's application of federal law is challenged, "the state court's decision must be shown to be not only erroneous, but objectively unreasonable.") (internal citations and quotations omitted).

This additional hurdle is added to the petitioner's substantive burden under Strickland. As the Supreme Court has observed a "doubly deferential judicial review that applies to a Strickland claim evaluated under the § 2254(d)(1) standard." Knowles v. Mirzayance, 556 U.S. 111, 123 (2009); see also Yarborough v. Gentry, 540 U.S. 1, 6 (2003) (noting that the review of ineffectiveness claims is

"doubly deferential when it is conducted through the lens of federal habeas"). This doubly deferential standard of review applies with particular force to strategic judgment like those thrust upon counsel in the instant case. In this regard, the Court has held that:

> "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Id., at 688, 104 S.Ct. 2052. "Judicial scrutiny of counsel's performance must be highly deferential," and "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id., at 689, 104 S.Ct. 2052. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." Id., at 690, 104 S.Ct. 2052.

Knowles v. Mirzayance, 556 U.S. 111, 124, 129 S. Ct. 1411, 1420, 173 L. Ed. 2d 251 (2009). The deference which is owed to these strategic choices by trial counsel is great.

> Therefore, in evaluating the first prong of the Strickland test, courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " Id. The presumption can be rebutted by showing "that the conduct was not, in fact, part of a strategy or by showing that the strategy employed was unsound." Thomas v. Varner, 428 F.3d 491, 499-500 (3d Cir.2005) (footnote omitted).

Lewis v. Horn, 581 F.3d 92, 113 (3d Cir. 2009).

In this case, Campas argues that counsel's performance was constitutionally deficient because it rested upon a misunderstanding that the trial court's ruling

regarding the scope of cross examination permitted of a potential defense character witness also applied to Campas' proposed testimony. Whatever force this argument might have in isolation is wholly undermined, however, by the fact that Campas' trial counsel credibly testified that he had a separate rationale for advising his client not to testify; namely, counsel's concern that Campas' fixed intention to testify to his own good character would open the door to potentially devastating cross examination concerning his failure to comply with PFAs in the past. In this setting, where counsel's strategic choice rests on several rationale, at least one of which reflects a sound strategic concern, it has been held that even though counsel "may have been mistaken in part of his legal reasoning [that factor standing alone] does not constitute ineffectiveness where the ultimate strategic choice was reasonable." Druery v. Thaler, 647 F.3d 535, 540 (5th Cir. 2011)(citing Strickland).

### B.    Campas is Not Entitled to Habeas Relief

Turning to the facts of this case, we find that Campas has not met the required exacting showing under Strickland that trial counsel rendered ineffective assistance of counsel. Campas contends that the Pennsylvania Superior Court unreasonably applied Strickland when it found that counsel had an objectively reasonable basis for advising Campas not to testify at trial. He claims that, because trial counsel may have misunderstood, and misstated the court's evidentiary ruling

to him, the advice against testifying could not have been a "strategy" within the parameters of Strickland. However, regardless of whether Campas or his counsel may have had any initial misunderstanding regarding the scope of the trial court's ruling, trial counsel had an independent basis for advising Campas not to testify. Notwithstanding any understanding, or misunderstanding, of the court's ruling on the PFA violation, trial counsel knew that Campas intended to take the stand and testify to his good, non-violent character. Counsel believed that this testimony, in turn, would have allowed the Commonwealth to use the PFA violation to impeach Campas' testimony. This was a sound, legitimate strategic concern since Pennsylvania courts have permitted such cross examination once a witness' testimony puts character at issue. See Com. v. Hitcho, 633 Pa. 51, 109, 123 A.3d 731, 766 (2015). As the Superior Court pointed out,

> Although generally 42 Pa.C.S. § 5918 precludes the examination of a defendant regarding convictions for other offenses or conduct tending to show bad character, that prohibition does not apply if the defendant, through counsel, has questioned prosecution witnesses 'with a view to establish his own good reputation or character, or has given evidence tending to prove his own good character or reputation.'

(Doc. 15-3, at 108 (quoting 42 Pa.C.S. § 5918(1)).

Thus, advising Campas not to testify was part of trial counsel's successful strategy of keeping evidence of the PFA contempt conviction out of the trial of this case. This strategic choice was thrust upon counsel when Campas' past history of

domestic violence collided with his desire to present evidence of his good character for peaceful, law-abiding behavior. Further, notwithstanding Campas' assertion that trial counsel may have erroneously believed that the trial court's ruling on the PFA evidence directly applied to Campas as a witness, trial counsel had an independent basis for advising Campas not to testify based on his prior conversations with Campas. That independent basis for advising Campas not to testify was grounded in counsel's understanding that Campas had a fixed desire to testify to his peaceful character, testimony which would expose Campas to potentially withering cross examination on instances of bad conduct, including PFA violations. Recognizing that that even though counsel "may have been mistaken in part of his legal reasoning [that factor standing alone] does not constitute ineffectiveness where the ultimate strategic choice was reasonable," Druery v. Thaler, 647 F.3d 535, 540 (5th Cir. 2011) (citing Strickland), we find that trial counsel's strategic decision to follow a course which prevented the jury from learning about his client's history of domestic violence was a sound trial strategy which is "virtually unchallengeable." Knowles v. Mirzayance, 556 U.S. 111, 124, 129 S. Ct. 1411, 1420, 173 L. Ed. 2d 251 (2009).

Additionally, the trial court conducted a full colloquy on the record to ensure that Campas fully understood his right to testify. Campas was asked if he had discussed all of his options with his counsel regarding his choice to testify, and

Campas replied that he had. (Doc. 15-1, at 49). The court asked Campas if he was making the decision not to testify of his own free will, and Campas replied that he was. (Id., at 50). At one point, Campas mentioned he had a "lack of knowledge" as to the fact that the PFA could be used against him, prompting the court, and the attorney for the Commonwealth, to inquire if Campas had any unanswered questions before making his decision not to testify. (Id.) Campas replied that he did not, and he ultimately chose not to testify.

Campas argues that his waiver of his right to testify could not have been knowing or voluntary because trial counsel gave him inaccurate information with respect to ability of the Commonwealth to cross examine him concerning this PFA evidence. Trial counsel told Campas that, if he testified, the Commonwealth could use the PFA contempt conviction against him. However, the state courts have found that counsel's advice was based upon his knowledge that Campas was going to put forth testimony of his good, non-violent character, which would have opened the door to allow the Commonwealth to impeach him with this evidence. Knowing that the PFA could possibly be used against him given his plan to testify to his good character, and after being told repeatedly that the decision to testify was his alone to make, Campas ultimately decided not to testify. In following this course, Campas acceded to the sound strategic advice of his counsel. Thus, on the record before us, we cannot conclude that counsel's advice to Campas to refrain

from testifying was erroneous or improperly negated his knowing and voluntary waiver of his right to testify.

Because we agree with the Superior Court that counsel's performance was not constitutionally deficient under <u>Strickland</u>, we need not address Campas' argument that he was prejudiced by counsel's performance beyond observing the dilemma thrust upon counsel when Campas' desire to testify to his good character stood in stark contrast to his own domestic violence and PFA history. Given this dilemma, counseling in favor of Campas testifying would have been a potentially disastrous course for Campas since it could have exposed Campas to withering cross examination on topics which otherwise would not have been admissible at trial. The advice of trial counsel was therefore a sound strategic choice which successfully mitigated this potential prejudice which would have flowed from Campas' proposed testimony and the cross examination which would have logically followed from that direct testimony.

### IV.   <u>Conclusion</u>

Accordingly, for the foregoing reasons, we conclude that the Petition for Writ of Habeas Corpus should be DENIED and that a certificate of appealability should not issue. An appropriate order follows.

Submitted this 15th day of October, 2018.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge